*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0042P (6th Cir.)
File Name: 02a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

No. 00-5180

CHERYL HUMPHREY,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 98-00007—Thomas G. Hull, District Judge.

Argued: December 4, 2001

Decided and Filed: January 30, 2002

Before: KENNEDY, MOORE, and COLE, Circuit Judges.

———————————————

**COUNSEL**

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellant. Sarah R. Shults, ASSISTANT UNITED STATES ATTORNEY, Greenville, Tennessee, for Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellant. Sarah R. Shults, ASSISTANT UNITED STATES ATTORNEY, Greenville, Tennessee, for Appellee.

1

MOORE, J., delivered the opinion of the court, in which COLE, J., joined. KENNEDY, J. (pp. 17-19), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Cheryl Ann Humphrey ("Humphrey") appeals her jury conviction and sentence for one count of embezzling bank funds, in violation of 18 U.S.C. § 656, and five counts of making false entries in bank records with the intent to defraud, in violation of 18 U.S.C. § 1005. She argues: 1) that the district court abused its discretion over the method of exercising peremptory challenges and the admission of evidence; 2) that the evidence is insufficient to support the convictions; and 3) that the district court improperly increased the offense level under U.S. Sentencing Guidelines Manual (U.S.S.G.) § 3B1.3 (2000) for abuse of a position of trust or use of a special skill. We **AFFIRM** Humphrey's convictions. Because we conclude that the district court erroneously applied U.S.S.G. § 3B1.3, we **VACATE** Humphrey's sentence and **REMAND** for resentencing.

## I. BACKGROUND

From 1975 to 1996, Humphrey was employed as a bank and vault teller for Hamilton Bank, later known as SunTrust Bank ("Bank"), of Johnson City, Tennessee. When she became a vault teller in 1990, Humphrey acted as the head teller for ten of the Bank's branches; her responsibilities included counting the contents of the Bank's vault, which stored cash, loose coin, and food stamps, and conducting various transactions with the Federal Reserve Bank ("Reserve"). Humphrey handled the shipment of food stamps to the Reserve for credit in the Bank's accounts.

In late 1995, Robert Odie Major ("Major"), who had recently been named Bank president, became concerned when

Her discretion in timing the shipment of food stamps enabled her to conceal her embezzlement. She was not a fiduciary. However, the enhancement is not limited to fiduciaries. Neither was she "an ordinary bank teller." She was dealing with ten branches, their excess cash (for transmittal to the Federal Reserve), their food stamps, their excess loose coin. The bank entrusted her with responsibility to send on food stamps as she determined. She had responsibilities beyond those of ordinary tellers. Without this discretion, defendant would not have been able to execute her scheme for as long as she did.

While I agree that the decision of the district court to apply U.S.S.G. § 3B1.3 is treated as a question of law in this Circuit which we review de novo, we are reviewing to see if defendant meets the minimum necessary for application of the guideline. I believe that she did and I would uphold the district court's decision to increase defendant's offense level for abuse of a position of trust.

In late 1995 or early 1996, the bank records showed an inventory of approximately $827,000 of food stamps. J.A. at 306. Most were no longer there, having been sent for redemption. She would also delay entering records of cash transactions with the Federal Reserve so that the bank's records would appear to balance, although they would show a huge inventory of food stamps.

When new management directed redemption of the food stamp inventory, defendant was asked to send the backlog of food stamps "as she could." J.A. at 307. Defendant later asked whether that directive could be modified, saying she had spoken to the auditor and was told there could be a variation. J.A. at 308. The bank operation officer, Ms. Laws, spoke to the auditor and determined that the directive to reduce the food stamp balance should be carried out. When the directive was confirmed, defendant said she was doing the best she could.

Defendant trained the other tellers who worked in the vault. She herself counted all the money. Although two signatures were required on the forms sent to the Federal Reserve, the other tellers, in accordance with defendant's directive, merely determined if the amount entered on the various forms was the amount she had stated was in the packages. What she stated was her count of the money or food stamps. In designating defendant to train the other employees, Sun Trust was assigning her managerial duties.

Terri Love, one of the other tellers, testified that defendant told her she, Mrs. Humphrey, had to count all the money and that the other tellers could not count money in the vault. J.A. at 266-67.

In view of the totality of the evidence of defendant's authority and position in the bank, I believe there was sufficient evidence for the court to conclude defendant had a position of trust. Until 1996, she had the discretion to decide when food stamps would be sent or retained. She had similar discretion with respect to loose change, also found to be thousands of dollars short.

he received an audit that showed an unusually high amount of food stamps in the Bank's vault. By early 1996, the Bank implemented new procedures that required the shipment of food stamps on a weekly basis. On March 7, 1996, Humphrey prepared the shipment of $651,403 worth of food stamps to the Reserve. The ticket for this shipment was approved by two employees, as required by the Bank's dual control policy. However, when the Bank interviewed Tommi Turbyfill ("Turbyfill") in the course of investigating a previous shipment that the Reserve had not cleared, Turbyfill denied approving the March 7 shipment or signing the ticket.

On September 3, 1996, Major confronted Humphrey about this discrepancy. When Humphrey admitted that she had signed Turbyfill's initials on the ticket, he gave her the option of resigning or being terminated. Humphrey chose to resign; she did not question the Bank's dual control policy or the reason for her termination. After Humphrey's resignation, groups of two and four Bank employees counted the cash in the vault and discovered a total loss in excess of $510,000.

On February 24, 1998, a federal grand jury indicted Humphrey on one count of embezzling funds in violation of 18 U.S.C. § 656 and six counts of making false entries in violation of 18 U.S.C. § 1005. Before trial, the district court granted the Government's motion to dismiss Count 7 and the forfeiture portion of Count 1. Humphrey pleaded not guilty and proceeded to trial, where a jury found her guilty of all charges. On November 9, 1999, Humphrey filed a motion for a judgment of acquittal or for a new trial, arguing that the evidence was insufficient to sustain any of her convictions and that the district court had erred in admitting coin bags filled with styrofoam "peanuts" into evidence. The district court overruled Humphrey's motion. On February 1, 2000, the district court entered judgment and sentenced Humphrey to thirty-six months on each of the six counts, to be served concurrently, and a five-year term of supervised release. On February 8, 2000, Humphrey filed a timely notice of appeal.

## II. ANALYSIS

### A. Peremptory Challenges

Humphrey first argues that the district court erred in refusing to allow her to "backstrike" during the jury selection process.[1]  We note as a general matter that we review a district court's method for exercising peremptory challenges for an abuse of discretion. *United States v. Mosely*, 810 F.2d 93, 96 (6th Cir.), *cert. denied*, 484 U.S. 841 (1987).  In this case, however, the issue was not properly raised before the district court; therefore, it was not preserved for us to review.  Instead of objecting to the content of the district court's rule against backstriking, defense counsel argued that he had forgotten or overlooked the rule, of which he had actual notice, because he was sick with the flu.  Defense counsel did not raise a legal issue but essentially requested that the district court give him an opportunity to correct his mistake.  Defense counsel did argue that the Government could not show prejudice, but this contention provides insufficient support for an objection.  We thus decline to review this claim.

### B. Evidentiary Problems

We review a district court's admission of evidence for an abuse of discretion. *United States v. Hart*, 70 F.3d 854, 858 (6th Cir. 1995), *cert. denied*, 517 U.S. 1127 (1996); *see also Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716-17 (6th Cir. 1999) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997), for the proposition that all evidentiary decisions are reviewed for an abuse of discretion).  "The scope of this discretion has been broadly construed, and the trial court's actions are to be sustained unless manifestly erroneous."

---

[1] Local rules against backstriking preclude counsel from exercising their remaining peremptory challenges against jurors whom counsel had previously passed in conducting the voir dire.  In other words, individuals who are not struck after a panel of prospective jurors has been questioned become members of the actual jury.  *See United States v. Anderson*, 562 F.2d 394, 396 (6th Cir. 1977).

---

### CONCURRING IN PART, DISSENTING IN PART

---

KENNEDY, Circuit Judge, concurring in part and dissenting in part.  I concur in all of the Court's opinion except the holding that the district court erred in its determination that defendant occupied a position of trust under United States Sentencing Guideline §3B1.3.  Section 3B1.3 provides a two-level enhancement if a defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense. . . ."  The commentary to the guidelines defines a position of trust as one "characterized by professional or managerial discretion."  U.S.S.G. § 3B1.3 app n.1.  Because I believe the evidence was sufficient to find Humphrey abused a position of trust, I would affirm the district court's imposition of the abuse of trust enhancement.

As head vault teller at Sun Trust Bank in Johnson City, Tennessee, and a twenty-year employee of the bank, defendant was responsible for receiving excess cash from ten branches of Sun Trust as well as food stamps from those branches.  Excess cash, if not needed at other branches, was deposited with the Federal Reserve Bank in Nashville, Tennessee.  Food stamps were also sent to the Nashville branch of the Federal Reserve Bank for redemption and a cash credit to the bank.  Receipts from the Federal Reserve were returned to defendant and she was the person contacted at Johnson City Sun Trust Bank when the Federal Reserve had questions.

Defendant determined when food stamps would be sent for redemption.  Her position required her to verify all monies in the vault and cash and food stamp shipments.  She maintained the record of the vault's transactions.  By recording the proceeds from food stamp shipments to the Federal Reserve as cash deposits rather than food stamp redemptions, she was able to conceal her embezzlement for a substantial time.

executive and an ordinary bank teller can embezzle funds from a bank, but only the former occupies a position of trust. The abuse of a position of trust sentencing enhancement thus captures the distinction between the two positions; it does not double count the offense. In any event, we have held in part II.D.1 that Humphrey did not hold a position of trust, so there is no possibility of double counting here.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Humphrey's convictions but **VACATE** her sentence and **REMAND** for resentencing consistent with this opinion.

*Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 257 (6th Cir. 1994) (internal quotation marks and citation omitted).

### 1. Admission of Coin Bags

Humphrey claims that the district court abused its discretion in admitting 107 coin bags as demonstrative evidence. At trial, the Government introduced as Government Exhibit 6a a vault cash form dated May 21, 1996, and verified by Humphrey that showed an inventory of $214,167.45 in loose coin. The Government also introduced a videotape dated May 21, 1996, that showed the area inside the Bank's vault where loose coin was stored. The purpose of the demonstrative evidence was to show the jury what 107 coin bags would look like and to establish that the vault did not contain that many coin bags. Six of the 107 bags were filled with coins; the remainder were stuffed with styrofoam peanuts to the approximate size of the bags filled with coins.

Defense counsel objected to the demonstration, arguing that the evidence was prejudicial because the bags filled with styrofoam were bigger than those filled with coins.[2] The

---

[2]Humphrey suggests on appeal that the coin bags "held no probative value." Appellant's Br. at 27. However, defense counsel at trial based his objection to the demonstration solely on the ground that all of the bags were not filled with coins: "[W]hen we're told that they're going to do a demonstration of actual coinage, there's no way we can object to that, that's coinage; but what you're going to find here is that all of this stuff here is not coinage. There's only four or five bags here that's coinage, and the rest of it is fluff." Joint Appendix ("J.A.") at 206.

At a pretrial conference held before United States Magistrate Judge Dennis H. Inman, the Government notified the court and the defense that it intended to introduce bags of coins totaling $20,000 to $40,000 and additional empty bags to show what $200,000 would look like. The Government explained that only a portion of the $200,000 would be in actual coins because bringing $200,000 to open court would present logistical and security problems. Humphrey's argument thus is one of prejudice, based on the fact that the Government introduced bags filled with styrofoam peanuts rather than the empty bags that were discussed at the pretrial conference.

district court thought otherwise. After hearing from an expert witness who stated that the bags filled with styrofoam were representative of and "about the same size" in volume as the bags filled with coins, the district court admitted the exhibit, noting that defense counsel could raise this issue on cross-examination. Joint Appendix ("J.A.") at 215-16. Defense counsel proceeded to do so. Witnesses for the Government later testified that they did not see that much loose coin in the Bank's vault on May 21, 1996, or on any other day.

Under Federal Rule of Evidence 403, evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* In admitting the coin bags into evidence, the district court did not expressly weigh their probative value against the danger of unfair prejudice, but it did recognize that the Government wanted the jury to see what the bags would look like in the Bank's vault. Reviewing this evidentiary decision, we are not persuaded that the district court abused its discretion. Humphrey observes on appeal that the Government could have introduced "a photograph of 217 [sic] bags of actual coins placed inside the vault" or used "[o]ther means of demonstration." Appellant's Br. at 31. The question before the district court, however, was whether the probative value of the coin bags was substantially outweighed by the danger of unfair prejudice. Although the amount at issue was in excess of $214,000, which would have filled 214 coin bags, the Government introduced half that number. We therefore conclude that the district court did not abuse its discretion in admitting the coin bags as evidence.

Humphrey also contends that Government witnesses should not have been allowed to testify about the number of coin bags that were depicted in the Bank's surveillance video of the vault. We conclude that this argument lacks merit. Not only did defense counsel fail to object at trial, but also Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact," with a limited exception not

received no education or training beyond high school. When she resigned from the Bank after working there for over twenty years, her annual salary was approximately $18,000. The Government cites Humphrey's "expertise in accounting procedures[,] which enabled her to manipulate the records to make the vault appear as if it was always in balance, when in fact it was not." Appellee's Br. at 46. However, we are not persuaded that such manipulation would require arithmetic skills more advanced than those possessed by members of the general public. *Cf. United States v. White*, 270 F.3d 356, 373 (6th Cir. 2001) (upholding the application of the special skill enhancement to a defendant who held the highest category license that Kentucky conferred to water treatment plant operators and noting that the license "requires annual training, educational courses, and completion of an examination"). Thus neither prong of U.S.S.G. § 3B1.3 is applicable, and Humphrey should be resentenced without the two-level enhancement.

### 3. Double Counting

Humphrey claims that the district court erred in enhancing her sentence for abuse of a position of trust because the base offense level already accounted for such conduct. In *Ragland*, we determined that § 3B1.3 is applicable to defendants convicted of 18 U.S.C. §§ 656 and 1005, but that the defendant in that case did not hold a position of trust. 72 F.3d at 501-03; *see also United States v. Brown*, 66 F.3d 124, 129 (6th Cir. 1995) (holding that "abuse of trust [is not] a necessary element of the crime of embezzlement"), *cert. denied*, 516 U.S. 1132 (1996); *cf. United States v. Sonsalla*, 241 F.3d 904, 909 (7th Cir. 2001) (reaffirming that "*breach* of trust is a necessary element of embezzlement under 18 U.S.C. § 656" but that "*abuse* of trust is not"); *United States v. Broumas*, 69 F.3d 1178, 1182 (D.C. Cir. 1995) (collecting cases from the five circuits that had previously rejected the double-counting argument), *cert. denied*, 517 U.S. 1148 (1996). Humphrey argues that the funds in this case were "intrusted to the custody or care of the bank." Appellant's Br. at 41. This fact, however, is irrelevant. Both a bank

"employees who administer another's property from those authorized only to handle it but who are lightly supervised") (citing *United States v. Tribble*, 206 F.3d 634, 637 (6th Cir. 2000)). Humphrey's job responsibilities did not involve fiduciary duties like those of a loan officer or an investment consultant. *Cf. United States v. Berridge*, 74 F.3d 113, 117 (6th Cir. 1996) (holding that the defendant, who was vice president of the bank's retail lending division, held a position of trust). The very fact that the Bank uses a dual control policy, which requires at least two employees to verify counts, suggests that Humphrey was accorded limited discretion. In addition, other internal controls operated by the Bank's accounting and balance control departments should have notified the Bank that the vault was out of balance. Furthermore, employees conducted business in the vault under the surveillance of two video cameras. Humphrey abused her clerical position and the Bank's apparent trust in her to embezzle cash from the Bank, but she did not hold a position of trust.

### 2. Use of Special Skill

Because § 3B1.3 is drafted in the alternative, Humphrey must show that she neither abused a position of trust nor used a special skill in her offense. The commentary to § 3B1.3 states that a special skill is "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3 commentary, applic. note 3. In this case, the district court found that Humphrey had "acquired special skills and knowledge of the banking system while serving as a vault teller and that these helped her commit and conceal her crimes." J.A. at 55.

Humphrey is a high school graduate who has spent most if not all of her working life at the Bank. She has apparently

J.A. at 189.

pertinent here. The witnesses were Bank employees and it appears that they testified about their personal knowledge of the vault's contents. Their testimony was thus clearly admissible.

### 2. Exclusion of Memo

Humphrey argues that the district court abused its discretion in excluding as hearsay a Bank memo dated August 20, 1996, about a shipment of food stamps from the Bank's Johnson City branch, where Humphrey worked, to the Nashville branch, where Van Ray Peeks, Sr. ("Peeks"), was the head teller. At trial, defense counsel asked Peeks whether he had "any independent recollection of the dates when those inquiries occurred." J.A. at 388. Peeks answered that he did not remember specific dates but did recall "the events that took place." J.A. at 388. He later affirmed on cross-examination that he remembered the relevant events.

Federal Rule of Evidence 803(5) provides for the admission of documents as recorded recollections if 1) the witness once had knowledge about a matter, 2) the witness now has insufficient memory to testify about that matter, and 3) the document was recorded when the matter was fresh in the witness's mind and the document correctly reflects the witness's knowledge of the matter. In this case, Peeks stated that he remembered the events in question.[3] The district court therefore correctly excluded the memo.

Humphrey also argues on appeal that the memo could have been admitted as a business record under Federal Rule of Evidence 803(6). Because defense counsel did not raise this

---

[3] Defense counsel suggested at trial that the memo would assist Peeks in his testimony and refresh his recollection of the events. J.A. at 389, 396. For this limited purpose, of course, the document would not have been introduced into evidence. *See United States v. Faulkner*, 538 F.2d 724, 727 (6th Cir.), *cert. denied*, 429 U.S. 1023 (1976); 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6184, at 457 (1993).

specific exception at trial, we review for plain error. FED. R. CRIM. P. 52(b). The business record exception is available if the document meets four requirements: 1) it was "made in the course of a regularly conducted business activity," 2) it was "kept in the regular course of [] business," 3) it was the result of a "regular practice of the business" to create such documents, and 4) it was "made by a person with knowledge of the transaction or from information transmitted by a person with knowledge." *United States v. Laster*, 258 F.3d 525, 529 (6th Cir. 2001) (citation omitted). A witness must lay the requisite foundation for the evidence to be admissible under the business record exception. *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986). Peeks did not lay such a foundation. Indeed, when the district court asked whether the memo had been "filed in the Bank records," Peeks answered, "I presume it was there. I didn't have a copy of it until this morning." J.A. at 391. He did not know where the memo had been kept. Furthermore, the fact that the memo was handwritten casts at least some doubt on whether it was a business document.

## C. Sufficiency of the Evidence

Humphrey challenges the district court's denial of her motion for a judgment of acquittal based on the insufficiency of the evidence. We review de novo a district court's denial of such a motion. *United States v. Talley*, 194 F.3d 758, 764 (6th Cir. 1999), *cert. denied*, 528 U.S. 1180 (2000). In reviewing Humphrey's claim, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard requires us to view both circumstantial and direct evidence in a light most favorable to the prosecution. *United States v. Hofstatter*, 8 F.3d 316, 324 (6th Cir. 1993), *cert. denied*, 510 U.S 1131 (1994). "Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of

*Ragland* suggests that an important purpose of § 3B1.3 is the defense of private ordering based on trust (or presumably in cases where "public trust" is violated, the necessary faith citizens must have in government for a well functioning republic); this separate wrong merits additional punishment.

*Brogan*, 238 F.3d at 783 (citations omitted). This analysis is highly instructive in this case. In applying the abuse of a position of trust enhancement to Humphrey's sentence, the district court adopted the Government's list of findings concerning the extent of Humphrey's responsibilities. These findings support the district court's conclusion that Humphrey "was subjected to minimal supervision." J.A. at 54. For example, the Government noted that Humphrey had "routinely circumvented" and ignored Bank procedures. J.A. at 46. The controlling question, however, is whether Humphrey's level of discretion was that of a fiduciary. We conclude that the record does not show by a preponderance of the evidence that Humphrey was in such a trust relationship with the Bank.

Although Humphrey appears to have been under light or no supervision, which made it possible for her to misrepresent shipments of canceled food stamps as shipments of cash or loose coin and to manipulate the timing of shipments, she was not authorized to exercise substantial professional or managerial discretion in her position. Humphrey did take advantage of her seniority to other Bank employees to control the daily cash count and to handle the food stamps. However, she was not in a trust relationship with the Bank such that she could administer its property or otherwise act in its best interest.[6] *See Brogan*, 238 F.3d at 784 (distinguishing

---

[6] The evidence in the record as to Humphrey's discretion over the timing of shipments to the Reserve is inconclusive. Humphrey apparently told a Bank manager that she had given higher priority to shipping cash rather shipping than food stamps because "the emphasis had been placed on cash . . . [and] she didn't know that food stamps were the same as cash," even though the Bank received credit for both in the same way.

issue, we are guided by the commentary's distinction between an ordinary bank teller and a bank executive. A vault teller obviously falls somewhere in the middle of this spectrum; Humphrey's level of discretion was greater than that of a regular teller but considerably less than that of a bank president.

In *United States v. Ragland*, 72 F.3d 500 (6th Cir. 1996), we faced a similar situation involving a bank employee whose fraud consisted of pocketing funds paid by customers for certificates of deposit ("CDs") and forging the signatures of bank officers on the CDs. *Id.* at 501. In holding that this customer service representative did not occupy "a position of public or private trust," we read this phrase as "a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary." *Id.* at 503. We have more recently elaborated upon our understanding of this sentencing enhancement:

> Under *Ragland*, the rationale for the sentencing enhancement is akin to punishment for violating a fiduciary duty, a higher duty than the ordinary one placed on all employees and breached by conversion. The trust relationship arises when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs. Indeed, the guideline examples of where the enhancement is appropriate correspond to the types of relationships where fiduciary duties are often implied: physician-patient, lawyer-client, officer-organization. . . . In general the formation of these sorts of confidential interdependent relationships is socially beneficial. Such relationships require, however, "faith in one's fellow man," which is generally undermined when an instance of abuse occurs. *Ragland*, 72 F.3d at 503. In effect,

*Brelsford*, 982 F.2d 269, 272 (8th Cir. 1992) (noting that the defendant was a teller supervisor who monitored other tellers).

guilt." *Talley*, 194 F.3d at 765 (quoting *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996)).

Humphrey contends on appeal that the acts of others – namely Bank employees or the armored carrier that transported food stamps and loose coin for the Bank – or clerical error could have caused the Bank's losses. These allegations are not supported by even a scintilla of evidence and fail to rebut the substantial amount of circumstantial evidence that supports the jury's guilty verdict. The evidence at trial showed that Humphrey used her position as the Bank's vault teller to record shipments of food stamps to the Reserve as shipments of cash or loose coin. Because the Reserve credited the Bank for the food stamps, the Bank's books appeared to clear. However, Humphrey's misrepresentations meant that the Bank's food stamps balance was greater than the number of food stamps on hand. The shortage came to light when the Bank acted to reduce its inflated food stamps balance.

Humphrey also maintains that her lifestyle and her debt burden do not suggest that she embezzled funds from the Bank. How Humphrey spent money, of course, has no bearing on whether she took money. Moreover, as the Government notes, Humphrey was indicted for and convicted of embezzling more than $1000, when the Bank's total losses were approximately $510,000. Appellee's Br. at 30. We therefore conclude that the circumstantial evidence was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that Humphrey was guilty of the crimes of which she was convicted.

### D. Sentencing

Humphrey challenges the district court's decision to increase her offense level under U.S.S.G. § 3B1.3 for abuse of a position of trust or use of a special skill. She argues that the adjustment should not apply to those who hold the position of a vault teller. Humphrey's base offense level was initially calculated at 6, then increased by ten points for a loss in excess of $500,000, two points for more than minimal

planning, and two points for abuse of a position of trust or use of a special skill, resulting in a total offense level of 20 and a sentencing range of thirty-three to forty-one months. The district court imposed a sentence of thirty-six months.

We review de novo questions of law concerning the application of the Sentencing Guidelines. *United States v. Young*, 266 F.3d 468, 474 (6th Cir. 2001).[4]

Under § 3B1.3, a district court may enhance by two levels the sentence of a defendant who has "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Humphrey's Presentence Report explained that her sentence should be so enhanced because she had used her authority as a vault teller and her seniority to prevent the verification of the vault's contents. In her objection to the Presentence Report, Humphrey claimed that § 3B1.3 was inapplicable because she had not held a position of trust. In its response, the Government argued that Humphrey's sentence should be enhanced for both abuse of a position of trust and use of a special skill. At the sentencing hearing, defense counsel challenged both enhancements. However, the district court specifically adopted the

---

[4]In certain circumstances, we review the application of a guideline to an undisputed factual situation under a more deferential standard. *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001) (citing *Buford v. United States*, 532 U.S. 59, ----, 121 S. Ct. 1276, 1281 (2001)). In *Buford*, the Supreme Court addressed "a narrow question of sentencing law" and affirmed the deferential review of a district court's determination as to whether a defendant's prior convictions were consolidated and thus "related" for sentencing purposes. 121 S. Ct. at 1278. The *Buford* Court reasoned that deferential review was appropriate "[i]n light of the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court [in making factual determinations], and the limited value of uniform court of appeals precedent." *Id.* at 1281.

Because the legal question raised in this case is not so much fact-bound as it is tied to an exposition of fiduciary duties, we are not compelled by *Buford*'s rationale to review the enhancement of Humphrey's sentence under a deferential standard.

---

Government's list of findings that showed Humphrey abused her position of trust and "acquired special skills and knowledge of the banking system while serving as a vault teller and that these helped her commit and conceal her crimes." J.A. at 54-55.

### 1. Abuse of Position of Trust

The Sentencing Guidelines commentary describes a position of trust as one "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3 commentary, applic. note 1. The application note specifies that the adjustment would apply to "a bank executive's fraudulent loan scheme" but not "embezzlement or theft by an ordinary bank teller." *Id.* We have previously established that the level of discretion rather than the amount of supervision is the definitive factor in determining whether a defendant held and abused a position of trust. *United States v. Hodge*, 259 F.3d 549, 556 (6th Cir. 2001). This discretion should be substantial and encompass fiduciary-like responsibilities. *Young*, 266 F.3d at 475 (citing *United States v. Brogan*, 238 F.3d 780, 783 (6th Cir. 2001)).

Whether U.S.S.G. § 3B1.3 applies to a vault teller is a matter of first impression in this circuit.[5] In deciding this

---

[5]In *United States v. Isaacson*, 155 F.3d 1083 (9th Cir. 1998), the Ninth Circuit upheld such an application, based on the defendant's additional responsibilities as a vault teller and the fact that the defendant's lengthy service had exempted her from "all of the security checks that other tellers went through." *Id.* at 1085. In *United States v. Johnson*, 4 F.3d 904 (10th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994), the Tenth Circuit also upheld the application of the abuse of a position of trust sentencing enhancement to a vault teller, whose responsibilities included ordering weekly shipments of cash, receiving the delivery of the cash, and counting and verifying each cash delivery, as well as safeguarding the key to the vault. *Id.* at 916-17.

Other circuits have emphasized the amount of supervision in applying U.S.S.G. § 3B1.3. *See, e.g.*, *United States v. Fisher*, 7 F.3d 69, 71 (5th Cir. 1993) (defendant, a head cashier, began to embezzle after her supervisor stopped conducting monthly spot-checks); *United States v.*