**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Baron HAYNES, Defendant–Appellant.**

No. 03–5450.

United States Court of Appeals,
Sixth Circuit.

Aug. 27, 2004.

Jerry R. Kitchen, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

M. Dianne Smothers, Asst. F.P. Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before KENNEDY, SUTTON, and COOK, Circuit Judges.

KENNEDY, Circuit Judge.

Baron Haynes, the defendant, was charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). The defendant moved to suppress the firearm on the ground that it was seized in violation of his Fourth Amendment rights when police officers entered the curtilage of a residence. He also moved to suppress his confession on the basis that it resulted from the arrest on the firearm charge. The district court denied the motion, finding there had been no violation of the Fourth Amendment. After the denial of his motion to suppress, the defendant conditionally pled guilty, reserving his right to appeal. Because we agree that there has been no Fourth Amendment violation, we AFFIRM.

The evidence introduced at the suppression hearing consisted of Officer James' and the defendant's testimony. The district court credited the testimony of Officer James and rejected the defendant's testimony, finding that the defendant was evasive and reluctant to answer the important questions. Moreover, the defendant's testimony may not be credited as it contradicts the written adopted statement he gave investigators.

At the suppression hearing, Officer James testified that on June 28, 2002, at approximately 2:30 a.m., he and his partner, Officer Williams, were requested by their sergeant to check out three individuals who were reported to be sitting in a vehicle on Lundy Lane. Officers James and Williams proceeded to the area, traveling on bicycles, through a little alleyway that runs north and south from Deadrick Street to Lundy Lane. While riding through the alleyway, the officers came upon the three individuals, the defendant, a Mr. Woods, and Dennis Haynes, in the back or side yard of 117 Lundy Lane. The defendant testified that the residence at 117 Lundy Lane belonged to a friend of his who he only knew as "Hit."[1] The defendant and Mr. Woods were sitting on a

---

1. The defendant admitted during the hearing on the motion to suppress to telling an officer the following: "We pulled up in a friend of mine's driveway that I only know as Hit on Lundy Lane. I was also with Hit's cousin."

picnic table while Dennis Haynes was leaning on a car parked a few yards in front of the picnic table. Officer James recognized Dennis Haynes from prior contacts and asked him what he was up to. Dennis Haynes responded that he was staying out of trouble. After some further conversation about what the officers were doing, Dennis Haynes stated, "Well, you know, you can check me out." At this point, Dennis Haynes lifted up his arms and pulled up his shirt. Officer James then stepped off his bike and walked over to where Dennis Haynes was standing and patted him down; nothing was found on him.

After patting down Dennis Haynes, Officer James pointed to the defendant and asked "What about you? Are you straight?" The defendant responded, "Yeah, I ain't got nothing on me." At that point, the defendant got up off the picnic table and walked toward Officer James. As the defendant walked toward him, Officer James observed the defendant throw down what appeared to be a black gun behind the tire of the nearby car. After patting down the defendant, Officer James drew his weapon, ordered the defendant to sit back on the picnic table, and retrieved the pistol. After the defendant's name was run through the computers, he was placed under arrest and subsequently indicted for possession of a firearm by a felon.

## ANALYSIS

For a defendant to claim the protection of the Fourth Amendment, he must first "demonstrate that he *personally* has an expectation of privacy in the place searched." *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (emphasis added). The Supreme Court has noted that a person's Fourth Amendment rights are not infringed if that person "is aggrieved by an illegal search and seizure only through the introduction

of damaging evidence secured by a search of a third person's premises or property." *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Nonetheless, the Court has noted, "a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Id.* at 142. For purposes of determining whether a person has a legally sufficient interest in a place other than his own home to claim the protection afforded by the Fourth Amendment, we must "look to the nature of the individual's ties to the property." *United States v. Harris,* 255 F.3d 288, 294 (6th Cir.2001) (citing *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)). In considering the nature of an individual's ties to the property searched, we "consider whether there was a previous relationship with the [property owner or lessee] or if there [were] any indicia of acceptance into the household." *United States v. Heath,* 259 F.3d 522, 532 (6th Cir.2001) (quotation marks omitted).

The defendant argues that he had a reasonable expectation of privacy in the yard of his friend's house because he was a social guest. The defendant appears to argue, in reliance upon *United States v. Rhiger,* 315 F.3d 1283 (10th Cir.2003), that essentially all social guests have a reasonable expectation of privacy in their host's residence. In *Rhiger,* the defendant notes, the court found that the social guest in that case had a reasonable expectation of privacy in his friend's residence. *Id.* at 1287. The *Rhiger* court did not conclude, however, that essentially all social guests have a reasonable expectation of privacy in their host's residence. Rather, for a guest to have a reasonable expectation of privacy, the court noted, he must establish that he has a "meaningful connection" to the residence. *Id.* at 1286. The *Rhiger* court concluded that the social guest in that case

had a legitimate expectation of privacy in his host's home when considering the guest's regular presence at the home, his overnight stays, and his comfort in entering the residence unannounced to take a nap. *Id.* at 1287.

This Court has similarly found a social guest to have a reasonable expectation of privacy in his host's residence where the guest was able to show a meaningful connection to his host's residence. *United States v. Pollard,* 215 F.3d 643, 647–48 (6th Cir.2000). In *Pollard,* we concluded that the defendant had a legitimate expectation of privacy in his host's residence where he had been friends with the lessee for seven years, occasionally spent the night at the residence, kept some personal belongings there, and was permitted to be in the home while the owner was out. *Id.* Similarly, in *Heath,* we concluded that the defendant had a legitimate expectation of privacy in his host's home where his host was his cousin, he slept on the couch as often as once a week for two years, he possessed a key to the residence, and he was able to exclude others. *Heath,* 259 F.3d at 533.

Unlike either *Pollard* or *Heath,* the defendant here has failed to show the existence of any meaningful connection to the residence at 117 Lundy Lane or any indications of acceptance into the household. Rather, the defendant stated only that he had been in town for three days and that he was arrested in the yard of his friend's house who he only knew as "Hit." This is wholly insufficient to find that the defendant has a legitimate expectation of privacy in the property.[2] *See United States v. Talley,* 275 F.3d 560, 563 (6th Cir.2001) (finding that the defendant presented no evidence that he had been to the residence for any period of time or for any purpose

that would give rise to a legitimate expectation of privacy); *United States v. Smith,* 783 F.2d 648, 650 (6th Cir.1986) (finding that the defendant had no legitimate expectation of privacy because his presence at the property was unexplained and the record disclosed no facts that entitled him to object to the search).

Because the defendant has failed to establish any meaningful connection to the property searched, and because the gun was in plain view on the property when Officer James observed it, the defendant has failed to show a violation of the Fourth Amendment. Finally, since the defendant's challenge to his confession was only that it resulted from an illegal arrest for the gun violation, it fails also. Accordingly, we AFFIRM.

---

2. Since the defendant personally did not have a legitimate expectation of privacy in the yard of the residence, we need not address whether *anyone* could have an expectation of privacy in the yard, i.e. whether the yard could constitute curtilage.