**NOT RECOMMENDED FOR PUBLICATION**

File Name: 06a0191n.06

Filed: March 21, 2006

**No. 05-5462**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| CARL JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER and GRIFFIN, Circuit Judges; Cook, District Judge.[*]

**SILER**, Circuit Judge. Defendant Carl Johnson appeals the denial of his motion to suppress, and the reasonableness of his 86-month sentence. For the reasons set forth below, we AFFIRM.

**I. Background**

In 2002, while on patrol in Memphis, Police Officers Herbison and Culpepper (the "Officers") noticed an oncoming vehicle with its high beams on. Officer Herbison believed that it was a violation of TENN. CODE ANN. §§ 55-9-406(a) and 55-9-407 to drive with high beams on, and that bright headlights could indicate a stolen vehicle. The Officers decided to pull the vehicle over to issue a citation and to investigate the possible theft. Before they could do so, the car turned into a driveway. Johnson exited the vehicle and started toward the door (which turned out to be the home

---

[*] The Honorable Julian A. Cook, United States District Judge for the Eastern District of Michigan, sitting by designation.

of his sometimes girlfriend, Kamilah Mason). Herbison attempted to speak with him, but Johnson appeared evasive. The Officers exited their vehicle and approached Johnson, at which point Johnson "banged" on the door and began "hollering out" for someone to open it. Ms. Mason suddenly opened the door and Johnson darted in while the Officers struggled to detain him. Johnson ran to a back room and Culpepper chased him, with Herbison following. The Officers saw Johnson withdraw an object from his front pocket or waistband, and toss it under a chair. Johnson then immediately surrendered.

While Johnson was in custody, Culpepper re-entered the back room of the home to investigate the object he saw being thrown under the chair. It was a gun. Johnson stated that the gun was his, but that he "wasn't going to pull it on [the Officers]. [He] was just trying to get rid of it." The Officers issued a misdemeanor ticket and let Johnson go. After it was later discovered that Johnson was a convicted felon, he was indicted under 18 U.S.C. § 922 for possessing a firearm.

The district court denied Johnson's motion to suppress both the firearm and his inculpatory statement. Johnson conditionally pled guilty and was sentenced to 86 months in prison.

## II. Discussion

### A.

In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and legal conclusions *de novo*. *See United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). We address, in order, Johnson's three arguments regarding his motion to suppress.

*1. Whether Johnson's Traffic Stop and Arrest Were Unlawful*

Johnson claims that the gun should be suppressed because the Officers violated his Fourth Amendment rights when they arrested him without probable cause, which led to the discovery of the gun. A warrantless arrest is lawful if the officer has probable cause to believe that the suspect either is, has, or is about to, commit a crime. *See United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). This is true even if the crime is minor. *See United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir.1993) (misdemeanor violation sufficient for probable cause to arrest suspect). Probable cause exists where an officer "has reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" based upon "the totality of the circumstances from the officer's perspective." *Id.* Here, the district court found that the Officers believed that Johnson committed a crime in violation of TENN. CODE ANN. §§ 55-9-406(a) and 55-9-407 by having his high beams on given the conditions that night. Johnson offers no rebuttal to this finding. Thus, we cannot conclude that the district court's finding of probable cause was clearly erroneous.[1]

Second, entry into the Mason home to arrest Johnson did not violate his Fourth Amendment rights. Subject to a few narrow exceptions, an intrusion into the home is presumptively unreasonable and requires either a warrant or sufficient evidence to believe that a crime is being committed therein. *See United States v. McNeal,* 955 F.2d 1067 (6th Cir. 1992). However, to raise a claim, one must have a reasonable expectation of privacy in the premises. *See Alderman v. United States*, 394 U.S. 165, 171 (1969) (Fourth Amendment violation can only be raised "by those whose

---

[1] At oral argument, Johnson argued that the Tennessee statutes are too broad and vague, and therefore do not define a crime. We disagree that the statutes do not define a crime; but even if they were vague, that would not preclude finding probable cause. *See Michigan v. DeFillipino*, 443 U.S. 31, 40 (1979) (probable cause not nullified by statute that was alleged to be unconstitutionally vague).

rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.").

Johnson claims that because he is Mason's boyfriend and had been in her home many times, he had a legitimate expectation of privacy. However, the district court credited the testimony that Johnson and Mason were not a couple anymore. Furthermore, merely having a relationship with the homeowner does not by itself establish a reasonable expectation of privacy. *Cf. United States v. Buckner*, 717 F.2d 297, 300 (6th Cir. 1983) (no expectation of privacy in mother's apartment). Thus, the district court's finding that Johnson had no Fourth Amendment standing was not clearly erroneous.

*2. Whether the Gun Should be Suppressed*

Johnson contends that the search of the back room of Mason's home was "unreasonable." However, as just discussed, Johnson lacked a reasonable expectation of privacy in the home and therefore cannot bring this claim. Furthermore, we doubt that this is "the kind of privacy interest that society is prepared to recognize as reasonable." *See United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000).

*3. Whether Johnson's Statements to the Officers Should be Suppressed*

Johnson alleges that his admission of the ownership of the gun was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 462-66 (1966). Though Johnson was in custody, his statement was neither elicited nor prompted. An inculpatory statement is fully admissible if made voluntarily. *See United States v. Innis*, 446 U.S. 291, 299-300 (1980).

**B.**

We review a defendant's sentence for "reasonableness." *United States v. Booker*, 125 S. Ct. 738, 765 (2005). In *United States v. Webb,* 403 F.3d 373, 383 (6th Cir. 2005), we refrained from establishing any rigid standards, but held that evidence that the district court considered the factors in 18 U.S.C. § 3553(a) afforded a presumption of reasonableness. We did not, however, require a district court to ritualistically recite the section 3553(a) factors and its findings on each. Here, the district court sentenced Johnson to 86 months in prison and ordered drug treatment and vocational training. It considered the purpose of 18 U.S.C. § 922, Johnson's criminal history involving a series of drug and violent offenses, and Johnson's need for rehabilitation. The district court expressly rejected reducing Johnson's sentence any further when asked to consider the fact that Johnson had not used or brandished the gun. Thus, it gave due consideration to the factors in section 3553(a).

**AFFIRMED**.