NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0149n.06

Nos. 24-6051, 25-5097

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 24, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| FREDRICK EUGENE CARNEY (24-6051); WILLIAM JOHN EWING (25-5097), | ) ) ) | |
| Defendants-Appellants. | ) ) ) | OPINION |

Before: CLAY, GIBBONS, and HERMANDORFER, Circuit Judges.

**CLAY, Circuit Judge**. Following a joint trial, the jury convicted Defendants William John Ewing ("Ewing") and Fredrick Eugene Carney ("Carney") of various crimes relating to a series of armed robberies. This consolidated appeal followed, wherein: (1) Ewing challenges the district court's failure to sever defendants and charges for trial under Federal Rule of Criminal Procedure 8; (2) Carney challenges the district court's denial of his motion to suppress; (3) both Defendants challenge the district court's admission of evidence under Federal Rule of Evidence 404(b); and (4) Ewing challenges the sufficiency of the evidence supporting his conviction under 18 U.S.C. § 924(c). For the reasons below, we **AFFIRM** the rulings of the district court.

## I. BACKGROUND

### A. Factual History

On March 24, 2022, an armed robbery occurred at a loan business, Cash Express, in Moulton, Alabama. At approximately 2:45 PM, only one employee was working at the Cash

Express.  After two people drove up in a black Honda Civic and parked outside the Cash Express, Defendant Fredrick Eugene Carney ("Carney") exited the car and entered the store.  Carney asked the employee about obtaining a loan, and as the employee began discussing the topic, an accomplice entered the store, pulled out a gun, and jumped the counter.  The accomplice was alleged by the government to be Defendant William John Ewing ("Ewing").  Upon directing the employee to open the safe, Carney and the accomplice stole money from the safe and then exited the store saying, "Let's go get the next one."  Trial Tr. Vol. 2-B, R. 202, Page ID #1283-85.  Carney and his accomplice returned to the black Honda Civic and drove north.  Surveillance footage recorded the black Honda Civic driving away from the Cash Express with a non-functioning left reverse light and distinctive weatherstripping.

At approximately 4:30 PM on the same day, Carney and his accomplice drove up in the black Honda Civic to another Cash Express in Ardmore, Tennessee, which is about 45 minutes away from Moulton.  Carney and his accomplice were still wearing the same clothes.  Carney's accomplice entered the Cash Express and asked the only employee working there at the time about obtaining a loan.  As the employee began discussing the topic, Carney entered the store and pulled out a gun, and the two men conducted another armed robbery by walking around the counter and directing the employee to open the money drawer.

On the morning of April 4, 2022, surveillance footage from Ewing's apartment complex recorded the same black Honda Civic, with a non-functioning left reverse light and distinctive weatherstripping, parked outside Ewing's apartment.  Carney and Ewing exited the black Honda Civic outside Ewing's apartment in the surveillance footage.  The car was also later confirmed to be registered under Ewing's name.  On that morning, Ewing texted his sister, Latika Poole ("Poole"): "I'm trying to get rich."  Trial Tr. Vol. 5, R. 205, Page ID #2072-73.

At around 2 PM that day, Carney and Ewing entered Regions Bank in Smyrna, Tennessee, stood for a while, then came around the employees' desks, pulled out guns, and proclaimed, "This is a robbery." Trial Tr. Vol. 2-B, R. 202, Page ID #1228. One of them pointed his gun at an employee and stated that if the employee pushed the alarm button, he would shoot the employee. Carney and Ewing directed employees to unlock the money drawer and vault, and they then stole money from those places. They also said that they were going to "take somebody out" if they did not get money from the vault. *Id.* at 1229. Afterward, Carney and Ewing drove off in a red Chevy Impala that Carney owned. Carney later exchanged the red Chevy Impala for a black Dodge Charger at a used car lot.

On April 20, 2022, Carney robbed another Cash Express in Greenbrier, Tennessee. Carney. Carney escaped from the scene in his black Dodge Charger and evaded the police pursuing him. On April 23, 2022, Carney told his girlfriend at the time, Shyanne McCullough ("McCullough"), that he robbed the Regions Bank in Smyrna and multiple other Cash Express locations, and she reported his confession to the police.

On May 1, 2022, while McCullough, Carney, and Ewing were at Ewing's apartment, Carney stated, "We're going to hit a bigger bank." Trial Tr. Vol. 3, R. 203, Page ID #1606-07. During that conversation, McCullough also saw guns under Ewing's couch and a gun on Carney's person. The next day, Carney and an accomplice alleged by the government to be Ewing robbed First Horizon Bank in Whites Creek, Tennessee. During the robbery, Carney warned an employee that he would get shot if he did not open the vault and then fired a gunshot into a nearby door.

Following reports of a robbery, law enforcement visited various addresses associated with the suspected perpetrators, Carney and Ewing. One of those locations was Poole's residence, and during law enforcement's visit there on May 2, 2022, law enforcement saw Carney, who attempted

to flee, but eventually arrested him pursuant to a warrant. While Carney initially fled from law enforcement, officers spoke with Poole outside her residence, and she signed a consent form that authorized a complete search of her address. As officers took photographs inside and outside of her residence, interviewed her in the driveway, and searched the entire premises, Poole never attempted to withdraw or limit her consent. Poole told officers that the black Dodge Charger parked in the nearby carport belonged to Carney and that Carney "sometimes sleeps" at her residence. Suppression Hr'g Tr., R. 144, Page ID #682, 693-94. Law enforcement towed the black Dodge Charger, and after obtaining a search warrant, gathered incriminating evidence from the vehicle.

## B. Procedural History

On May 22, 2023, the grand jury returned the Third Superseding Indictment, which is the operative indictment in this case. The Third Superseding Indictment charged Ewing and Carney with: two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951 (regarding the Cash Express robberies in Ardmore and another location); two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (regarding the robberies at the Regions Bank in Smyrna and the First Horizon Bank in Whites Creek); two counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); and one count of discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The Third Superseding Indictment also charged Carney with: two additional counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951 (regarding the Cash Express robberies in Greenbrier and another location); one additional count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924.

Neither Carney nor Ewing were charged with any crimes relating to the Cash Express robbery in Moulton.

Prior to the Third Superseding Indictment, Ewing had moved to sever his trial from Carney's trial after the grand jury returned the Superseding Indictment. Ewing had also filed a motion objecting to misjoinder and requesting to sever his trial after the Second Superseding Indictment. The district court denied all of these motions.

Ewing did not, however, raise any objection to misjoinder or move for severance after the grand jury returned the Third Superseding Indictment. Instead, Ewing's counsel indicated that Ewing did not want the district court to sever his trial. At a pretrial conference, the district court requested Carney's and Ewing's counsel's thoughts regarding "how the trial [will] go forward [since] there's a new indictment," referring to the Third Superseding Indictment. Pretrial Conference Tr., R. 273, Page ID #3067-68. Carney's counsel stated that Carney "wishes to proceed [to trial] on the entire indictment" and "does not wish to have it severed." *Id.* at 3076. After some back and forth, the district court asked Ewing's counsel for his views, and Ewing's counsel stated that he "second[s] everything [his] colleague has said," and "Ewing . . . is very adamant that he wants to go [to trial] on all charges in the third superseding indictment." *Id.* at 3089. Ewing's counsel further confirmed, "I won't go over all of the responses my colleague has given, but I agree with them." *Id.*

Carney also filed a motion to suppress evidence that resulted from the seizure of the black Dodge Charger, which he alleged was an unreasonable seizure in violation of his Fourth Amendment rights. Following a suppression hearing, where the government presented testimony from five witnesses and introduced twelve exhibits and Carney did not present any evidence, the district court denied Carney's motion to suppress.

In preparation for trial, the government filed a notice of intent to introduce evidence regarding the uncharged robbery of the Cash Express that occurred in Moulton, Alabama on March 24, 2022. The district court admitted such evidence pursuant to Federal Rule of Evidence 404(b), finding that the government offered it for the legitimate purposes of establishing the identity and *modus operandi* of the perpetrators of other charged robberies at issue in the case, including the robbery of the Cash Express in Ardmore that occurred on the same day. The district court assured the parties that the evidence would be accompanied by a limiting instruction for the jury. At trial, the district court provided the limiting instruction once when the jury first heard the evidence of the Moulton robbery and again at closing instructions.

Following trial, the jury convicted Ewing of one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (both regarding the Regions Bank robbery in Smyrna). The jury convicted Carney of two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951 (regarding the Cash Express robberies in Ardmore and another location); two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (regarding the robberies at the Regions Bank in Smyrna and the First Horizon Bank in Whites Creek); three counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); one count of discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924. The district court sentenced Ewing and Carney to 147 and 384 months of imprisonment respectively.

This appeal followed. Ewing challenges the district court's failure to sever the defendants and charges for trial. Carney challenges the district court's denial of his motion to suppress evidence resulting from the seizure of his black Dodge Charger. Both Ewing and Carney challenge

the district court's admission of evidence regarding the uncharged robbery of the Cash Express in Moulton. And Ewing challenges the sufficiency of the evidence for his conviction of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).

## II.    DISCUSSION

### A.  Severance of Defendants and Charges

Ewing argues that his convictions must be vacated because severance was mandatory due to misjoinder of defendants and charges in the Third Superseding Indictment.

After the grand jury returned the Second Superseding Indictment, Ewing moved for severance based on misjoinder under Federal Rule of Criminal Procedure 8 and, alternatively, moved for severance based on prejudicial joinder under Rule 14. The district court denied Ewing's motion. The grand jury later issued a Third Superseding Indictment, which became the operative indictment in this case and served as the basis for the charges against Ewing at trial. Ewing did not file any motion for severance or raise any objection to misjoinder regarding the Third Superseding Indictment.

On appeal, Ewing presents argument only on his motion for severance based on misjoinder under Rule 8 and does not discuss his motion for severance based on prejudicial joinder under Rule 14. This is likely so because we "have long held that a defendant waives an argument for severance under Rule 14 if he does not renew his Rule 14 motion 'following the close of the evidence at trial.'" *United States v. Abbott*, No. 24-5602, 2025 WL 2237656, at *4 (6th Cir. Aug. 6, 2025) (quoting *United States v. Sherrill*, 972 F.3d 752, 762 (6th Cir. 2020)). Because Ewing did not renew his motion at the end of the trial, Ewing waived any argument for severance under Rule 14.

And, as the government correctly contends, Ewing also waived his argument for severance under Rule 8. At a pretrial conference, the district court requested Carney's and Ewing's counsel's thoughts regarding "how the trial [will] go forward [since] there's a new indictment," referring to the Third Superseding Indictment. Pretrial Conference Tr., R. 273, Page ID #3067-68. In response, Carney's counsel stated that Carney "wishes to proceed to trial on the entire indictment, the third superseding indictment," and "does not wish to have it severed." *Id.* at 3076. Ewing's counsel then stated that he "second[s] everything [his] colleague has said," and "Ewing . . . is very adamant that he wants to go [to trial] on all charges in the third superseding indictment." *Id.* at 3089. Ewing's counsel further confirmed, "I won't go over all of the responses my colleague has given, but I agree with them." *Id.* He then agreed with the district court's proposed timeline for a joint trial on all charges.

Through these statements at the pretrial conference, Ewing's counsel agreed that Ewing did not wish to have the Third Superseding Indictment severed and instead wished to proceed jointly with Carney on the entire indictment. By agreeing with Carney's counsel's statement that he did not wish to have the indictment severed for trial, Ewing's counsel waived any argument on appeal that the district court should have severed the defendants or charges in the Third Superseding Indictment. Such an "intentional relinquishment or abandonment of a known right" is not reviewable by this Court. *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). For we have held that an "attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course," and when an attorney does so, his client "waive[s] his claim on the issue." *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002); *accord United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990).

Ewing argues that waiver should not apply to this argument because he filed the motion for severance regarding the Second Superseding Indictment, and a "new motion to sever or claiming misjoinder would not have brought anything new to the trial court." Ewing Appellant's Reply at 6. But that is incorrect. Ewing's motion for severance contemplates only the counts in the Second Superseding Indictment. But the Third Superseding Indictment replaced the Second Superseding Indictment as the operative indictment for trial, and all of the counts except for one in the Third Superseding Indictment are different from the counts in the Second Superseding Indictment. Moreover, the Third Superseding Indictment alleged two new robberies and added four new counts, including one new alleged crime. A defendant must raise a "defect in the indictment" prior to trial, Fed. R. Crim. P. 12(b)(3)(B), and Ewing did not raise any defect in the Third Superseding Indictment prior to his trial. But, in any event, Ewing relinquished any argument regarding severance when his counsel provided that Ewing did not wish to have the Third Superseding Indictment severed for trial.

Ewing next argues that his "counsel's statement about the desire to proceed to trial can only be considered a waiver if taken grossly out of context." Ewing Appellant's Reply at 7. But we reasonably view Ewing's counsel's statements in the context established by the district court when it invited counsel's thoughts on "how the trial [will] go forward [since] there's a new indictment." Pretrial Conference Tr., R. 273, Page ID #3067-68. Ewing contends that his counsel's indication that he did not want the Third Superseding Indictment to be severed was limited solely to the context of severance as "an option to address concerns over speedy trial issues" and "did not include severance of charges at all under Rule 8(a)." Ewing Appellant's Reply at 10. But that suggested limitation exists nowhere in the record. Ewing's counsel stated that he "second[s] everything [his] colleague has said," including that he did not want the indictment to

be severed (without any exception or limitation), and that he "is very adamant that he wants to go [to trial] on all charges in the third superseding indictment." Pretrial Conference Tr., R. 273, Page ID #3089. A "party cannot tell the district court one thing and then tell us the opposite." *United States v. Artrip*, 364 F. App'x 204, 205 (6th Cir. 2010). And Ewing's counsel told the district court that he did not wish to have the indictment severed and now tells us that he did wish to have the indictment severed.

Because Ewing did not make any objection to the Third Superseding Indictment regarding severance or misjoinder and instead provided that he did not wish for the Third Superseding Indictment to be severed for trial, we find that Ewing did not preserve the issue of severance for appellate review.

### B. Carney's Motion to Suppress

Carney challenges the district court's denial of his motion to suppress evidence resulting from the seizure of his black Dodge Charger from Poole's residence, arguing that the seizure violated his Fourth Amendment rights.

In reviewing the denial of a motion to suppress, we apply a "mixed standard of review." *United States v. Simmons*, 129 F.4th 382, 386 (6th Cir. 2025). "We review the district court's factual findings for clear error and legal conclusions *de novo*." *Id.* (emphasis added). In doing so, we "consider the evidence in the light most favorable to the government." *United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024). The denial of a motion to suppress "will be affirmed if it 'can be justified for any reason.'" *United States v. Burrell*, 114 F.4th 537, 550 (6th Cir. 2024) (quoting *United States v. Whitley*, 34 F.4th 522, 528 (6th Cir. 2022)).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Fourth Amendment rights are "personal," so "a defendant must show that his own

rights were infringed." *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022) (citations and quotations omitted). A defendant thus bears "the burden of establishing his standing to assert a Fourth Amendment violation." *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). To establish standing, "the defendant must show (1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable." *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009).

The government argued at the district court and now argues on appeal that Carney lacks standing to challenge the seizure of his vehicle from Poole's residence. In denying Carney's motion to suppress, the district court did not make any finding regarding whether Carney had standing to contest the seizure and, instead, concluded that the seizure was lawful regardless. But Carney failed to carry his burden of "establishing his standing to assert a Fourth Amendment violation." *Smith*, 263 F.3d at 582.

"It is well-settled that a person has no reasonable expectation of privacy where he is neither a resident nor an overnight guest in a residence." *United States v. Plavcak*, 411 F.3d 655, 665 (6th Cir. 2005). "The Supreme Court has recognized an overnight guest's 'legitimate expectation of privacy in his host's home.'" *United States v. Knowledge*, 418 F. App'x 405, 407 (6th Cir. 2011) (quoting *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)). To otherwise have a reasonable expectation of privacy as a guest at another person's residence, a defendant must "establish that he has a meaningful connection to the residence." *United States v. Haynes*, 108 F. App'x 372, 374 (6th Cir. 2004) (quotation omitted). For example, in *United States v. Pollard*, we held that a defendant had standing to contest a search of another person's residence where he provided evidence that he "had been staying at the home earlier in the week," "occasionally spent the night at the residence," "kept some personal belongings in a closet," "sometimes ate meals with the family during his

visits," and "was allowed to stay in the home even if the residents were not present." 215 F.3d 643, 647-48 (6th Cir. 2000). But we have also held that "a casual, transient visitor" lacks Fourth Amendment standing to challenge a search or seizure at another person's residence. *United States v. McNeal*, 955 F.2d 1067, 1070 (6th Cir. 1992); *see also United States v. Anderson*, 166 F.3d 1215, 1998 WL 833701, at * 7 (6th Cir. 1998) ("A casual visitor, unlike an overnight visitor, does not have standing to contest a warrantless search.").

The only argument that Carney offers as to why he had a reasonable expectation of privacy at Poole's residence is that he "was a frequent overnight guest" at Poole's residence and "was permitted to keep his car at the residence." Carney Appellant's Br. at 13, 15. But Carney does not cite to any evidence in the record that substantiates these assertions. Carney does not confirm that he was in fact an overnight guest at the time of the seizure of his vehicle or elaborate on the frequency of his overnight stays at Poole's residence. Carney does not indicate what belongings, if any, that he kept at Poole's residence or whether he had any other privileges there besides parking his car outside the residence while visiting. *Cf. United States v. Waller*, 426 F.3d 838, 844-45 (6th Cir. 2005) (holding that a defendant had a reasonable expectation of privacy at another person's apartment that he used "primarily for showering, changing clothes, and storing his personal belongings," including in a bedroom closet); *United States v. Heath*, 259 F.3d 522, 533 (6th Cir. 2001) (holding that a defendant had a reasonable expectation of privacy at his cousin's apartment where he "slept on the couch . . . once a week for approximately two years" and "possessed a key which . . . allowed [him] unfettered access to the apartment and the ability to admit and exclude others" (quotations omitted)). And although Carney was Poole's brother, "merely having a relationship with the homeowner does not by itself establish a reasonable expectation of privacy." *United States v. Johnson*, 171 F. App'x 499, 501-02 (6th Cir. 2006)

(citing *United States v. Buckner*, 717 F.2d 297, 300 (6th Cir. 1983) (holding that a defendant does not have a reasonable expectation of privacy at his mother's apartment)). The only evidence in the record regarding Carney's connection to Poole's residence that is apparent to the Court, as highlighted by the government, is Poole's statement that Carney "sometimes sleeps" at her residence. Suppression Hr'g Tr., R. 144, Page ID #682. That statement alone does not establish that Carney had a reasonable expectation of privacy at Poole's residence during the seizure. Given the dearth of evidence, we may liken Carney to only a casual visitor, who lacks Fourth Amendment standing to challenge a search or seizure at Poole's residence. *See McNeal*, 955 F.2d at 1070; *see also Anderson*, 1998 WL 833701, at \*7.

Since Carney does not have standing to contest the seizure, the district court's denial of Carney's motion to suppress "can be justified for any reason."[1] *Burrell*, 114 F.4th at 550 (quoting *Whitley*, 34 F.4th at 528). We therefore affirm the district court's denial of the motion.

### C. Rule 404(b) Evidence of the Uncharged Moulton Robbery

Both Ewing and Carney argue that the district court erred in admitting evidence regarding the uncharged robbery at Cash Express in Moulton on March 24, 2022. The district court admitted this evidence under Federal Rule of Evidence 404(b) for the purposes of establishing identity and *modus operandi*, and Ewing and Carney preserved their objections.

Rule 404(b) prohibits district courts "from permitting evidence of other crimes or wrongs ('bad acts') to be used to prove character or propensity to violate the law." *United States v. Fairley*, 137 F.4th 503, 517 (6th Cir. 2025). "However, such evidence may be admitted for other purposes, such as to show 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

---

[1] The district court indicated that the plain view and automobile exceptions justify law enforcement's seizure of the vehicle, but because the district court's denial of Carney's motion to suppress "can be justified for any reason," we need not review the merits of the other bases for the district court's conclusion. *Burrell*, 114 F.4th at 550 (quoting *Whitley*, 34 F.4th at 528).

mistake, or lack of accident.'" *Id.* (quoting Fed. R. Evid. 404(b)). And that list is "not exhaustive"—another "proper purpose" is "*modus operandi*." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (emphasis added). "District courts possess broad discretion in admitting evidence under Rule 404(b)." *United States v. Will*, 612 F. App'x 265, 267 (6th Cir. 2015). We use a three-part test to review their exercise of that discretion: "First, we review for clear error the factual determination that other acts occurred. Second, we review *de novo* the legal determination that the acts were admissible for a permissible 404(b) purpose. Third, we review for abuse of discretion the determination that the probative value of the evidence is not substantially outweighed by unfair prejudicial impact."[2] *Fairley*, 137 F.4th at 517 (quoting *United States v. Adams*, 722 F.3d 788, 810-11 (6th Cir. 2013)).

### 1. Step One

At the first step, there is no dispute that the robbery in Moulton occurred, so the district court did not clearly err in so finding. But in *United States v. Clay*, we also held that, at the first step, we "must review for clear error the district court's determination that there is 'sufficient evidence to support a finding by the jury that the defendant committed'" the other act. 667 F.3d 689, 694 (6th Cir. 2012) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). To that end, the district court stated that it would follow the "sufficient evidence approach used by the Court in the *Clay* opinion" and found that there was "sufficient evidence that the perpetrators of the Moulton robbery of the Cash Express were also the perpetrators of the Ardmore, Tennessee, Cash Express [robbery] 90 minutes later on March 24, 2022." Trial Tr. Vol. 2-B, R. 202, Page ID #1251-52 (citation modified). The district court highlighted the "testimony and evidence about

---

[2] As the government points out, this Court's caselaw is unsettled as to whether *de novo* or abuse of discretion review governs the district court's determination that prior bad acts were admissible for a proper purpose under Rule 404(b). *E.g.*, *United States v. Mandoka*, 869 F.3d 448, 457 (6th Cir. 2017). Because the government does not object to applying *de novo* review in this case, we take that route.

the same or similar car, similar clothing, general description of the perpetrators, and then the method of the robbery that's depicted on video and still shots of the two facilities." *Id.*

Ewing and Carney argue that the district court clearly erred at the first step because it found that sufficient evidence shows that the perpetrators of the Moulton robbery were the same perpetrators of the Ardmore robbery, instead of finding that sufficient evidence shows that Ewing and Carney committed the Moulton robbery. To the extent that the district court did not use the exact words articulated by this Court in *Clay*, under clear error review, we "look to the entire record and determine whether we are 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ibarra*, Nos. 24-5174/5176/5248/5361, 2025 WL 1542319, at *8 (6th Cir. May 30, 2025) (quoting *Mathis*, 738 F.3d at 739). We "may affirm on any grounds supported by the record, even if different from the reasons of the district court." *United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020).

The record provides ample evidence to support a finding that Carney and Ewing committed the Moulton robbery. McCullough, who personally knew Ewing and Carney, identified both of them as the perpetrators of the Moulton robbery based on the surveillance footage. Surveillance footage also recorded the perpetrators of the Moulton robbery driving away from the Cash Express in a black Honda Civic with a non-functioning left reverse light and distinctive weatherstripping. That same black Honda Civic was confirmed to be registered under Ewing's name. And surveillance footage also showed Carney and Ewing together exiting that same black Honda Civic outside Ewing's apartment. The perpetrators of the Moulton robbery were also wearing the same clothes as the perpetrators of the Ardmore robbery only 90 minutes later, and cell phone records placed Carney in Ardmore at the time of the Ardmore robbery. In light of this evidence, the district court did not clearly err in finding that there was sufficient evidence at the first step.

**2. Step Two**

At the second step, the district court found that the government offered evidence of the Moulton robbery for two proper purposes: identity and *modus operandi*.

The district court properly admitted evidence of the Moulton robbery to establish the identity of Ewing and Carney as the perpetrators of other charged robberies, including the robbery of the Cash Express in Ardmore on the same day of the Moulton robbery and the robbery of the Regions Bank in Smyrna on April 4, 2022. As already indicated, the perpetrators of the Moulton and Ardmore robberies, which occurred within 90 minutes of each other, were wearing the same clothes and driving the same car—a car registered under Ewing's name and a car that Ewing and Carney were later seen exiting outside Ewing's apartment. While leaving the site of the Moulton robbery, the perpetrators said, "Let's go get the next one," and then drove the car north in the direction of Ardmore. Trial Tr. Vol. 2-B, R. 202, Page ID #1283-85, 1287, 1312. Because McCullough identified Ewing and Carney as the perpetrators of the Moulton robbery, and that robbery was connected to the Ardmore robbery, evidence of the Moulton robbery would indicate that Ewing and Carney were also the perpetrators of the Ardmore robbery. Moreover, when exiting the car used in the Moulton and Ardmore robberies while outside of Ewing's apartment, Ewing and Carney were wearing the same clothes as the perpetrators who later that day committed the Smyrna robbery. In light of these links to other charged robberies, the district court properly admitted evidence of the Moulton robbery to establish identity. To be sure, the identity of the perpetrators of the charged robberies was a major, if not the most important, issue at trial, and "when the issue is one related solely to identity, this Court has overwhelmingly approved of the admission of 'other acts' evidence." *Perry*, 438 F.3d at 648 (quoting *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993)).

The district court also properly admitted evidence of the Moulton robbery to show *modus operandi*. "To qualify as *modus operandi* evidence, the similarity between the prior crime and the charged offense must be striking, and the method must amount to a 'signature.'" *United States v. Joseph*, 270 F. App'x 399, 406 (6th Cir. 2008) (quoting *Perry*, 438 F.3d at 648). But "it is not necessary . . . that the crimes be identical in every detail." *Id.* (quoting *Perry*, 438 F.3d at 648). So "two crimes of sufficient distinctive similarity can create . . . *modus operandi*." *Perry*, 438 F.3d at 648 (emphasis added). For example, in *Perry*, we found that the district court admitted evidence of the other bank robbery for the proper purpose of establishing *modus operandi* where the defendant followed a similar pattern in both the other bank robbery and the charged bank robbery: the defendant entered the business carrying a gun, then made requests for change and money orders, and then pulled out his gun to commit the robbery. *Id.*

Similarly, the Moulton robbery has sufficient distinctive similarity to at least one of the charged crimes, the Ardmore robbery. Both of these robberies occurred at a Cash Express on the same day within 90 minutes of each other. During these robberies, one of the perpetrators entered the business and made a monetary request, and then the other perpetrator entered the business with a firearm and initiated the robbery, in which they threatened the employee with their gun and directed the employee to unlock the location where the money was stored. These "two crimes of sufficient distinctive similarity" can establish "*modus operandi*." *Id.* (emphasis added). Further, other charged robberies also featured a similar method. To the extent that there were any slight differences in the methods of the various charged robberies, "it is not necessary . . . that the crimes

be identical in every detail" to establish *modus operandi*.[3] *Joseph*, 270 F. App'x at 406 (quoting *Perry*, 438 F.3d at 648).

### 3. Step Three

At the third step, the district court recognized that it would "do[] a Rule 403 analysis" and found that the court would "alleviate any issues with 403 by giving a limiting instruction" that the jury "may not consider [the evidence of the Moulton robbery] for any other purpose" apart from identity and *modus operandi*. Trial Tr. Vol. 2-B, R. 202, Page ID #1251-5.

"In the case of a Rule 403 analysis, we grant the district court 'very broad' discretion in making its determinations." *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020) (quoting *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006)). We take "a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former." *Id.* (quoting *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997)).

Ewing and Carney argue that the district court abused its discretion at this step because it did not explicitly state on the record that the probative value of the evidence was not substantially outweighed by unfair prejudice. But the district court acknowledged that it would "do[] a Rule 403 analysis," which precisely involves evaluating whether the probative value of the evidence was substantially outweighed by unfair prejudice. Trial Tr. Vol. 2-B, R. 202, Page ID #1251; Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially

---

[3] It is worth noting that we need not even consider whether the evidence was properly admitted to show *modus operandi* because the district court properly admitted the evidence of the Moulton robbery to show identity. The district court's admission of the evidence for any other reason besides identity "does not affect the ultimate admissibility of the evidence," because if the district court "admitted evidence for a single legitimate reason, the court's articulation of additional erroneous reasons is of no consequence." *United States v. Ray*, 549 F. App'x 428, 433 (6th Cir. 2013); *see also United States v. Higgins*, No. 22-3538, 2023 WL 6536752, at *7 n.5 (6th Cir. Oct. 6, 2023) ("Because the recordings served the proper purpose of pro[v]ing [the defendant's] intent, the court need not address his alternative argument that they fail as *modus operandi* evidence.").

outweighed by a danger of . . . unfair prejudice."). And by finding that the court would "alleviate any issues with 403 by giving a limiting instruction," the district court indicated that the limiting instruction would prevent the probative value of the evidence from being substantially outweighed by the unfair prejudice. *Id.* at 1252. In doing so, the district court did not "rel[y] on erroneous findings of fact, appl[y] the wrong legal standard, misapply[y] the correct legal standard when reaching a conclusion, or ma[ke] a clear error of judgment," as Ewing argues. Ewing Appellant's Br. at 40 (quoting *Schlaud v. Snyder*, 717 F.3d 451, 457 (6th Cir. 2013)); *see also Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 351-52 (6th Cir. 2011). Although the district court could have stated its finding more clearly, the district court did not abuse its discretion where it recognized that it would undertake the proper analysis at this step and then concluded that a limiting instruction would alleviate any concern that the defendants would be unfairly prejudiced by the evidence.

And to be clear, the probative value of the evidence was not substantially outweighed by unfair prejudice to Ewing and Carney. The evidence of the Moulton robbery had significant probative value because it linked Ewing and Carney to other charged robberies, including one that occurred on the same day, and demonstrated their method of carrying out those robberies. Although Ewing and Carney may have been prejudiced by this evidence, such prejudice was not "unfair." *See Fairley*, 137 F.4th at 518. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Choate*, 208 F.3d 215, 2000 WL 263348, at *6 (6th Cir. 2000) (quoting *United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1994)). Through the limiting instruction, the district court ensured that the jury would not use the evidence to render a decision based on an improper basis. *See United States*

*v. Townsend*, 796 F.2d 158, 162 (6th Cir. 1986) ("[T]he district court, by giving a strong cautionary instruction, insured [sic] that defendant would not be unfairly prejudiced by the testimony."). The district court provided the limiting instruction that the jury "must not consider [the evidence] for any other purpose" to the jury once when they first heard the evidence of the Moulton robbery and again at closing instructions. Trial Tr. Vol. 2-B, R. 202, Page ID #1262; Trial Tr. Vol. 7, R. 207, Page ID #2369; *see United States v. Cordero*, 973 F.3d 603, 621 (6th Cir. 2020) ("[A]ny prejudice resulting from [the] testimony was diminished by the court's legally correct cautionary instructions, which were delivered both at the time the testimony was given and again at the conclusion of trial. The trial court's delivery of consistent, frequent, and accurate limiting instructions weighs against a finding of unfair prejudice."). Although Ewing argues that the jury may have used the evidence to show character or propensity, that argument fails to consider "the almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987) (collecting cases); *see also Samia v. United States*, 599 U.S. 635, 646 (2023) ("[O]ur legal system presumes that jurors will attend closely the particular language of such instructions in a criminal case and strive to understand, make sense of, and follow them." (citation modified)).

The district court thus did not err in exercising its discretion and admitting evidence of the Moulton robbery under Rule 404(b).

**D. Sufficiency of the Evidence for Ewing's Conviction under 18 U.S.C. § 924(c)**

Ewing argues that his conviction for brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (regarding the Regions Bank robbery in Smyrna) should be vacated because insufficient evidence supports the jury's finding that Ewing used a real gun during the

bank robbery. Ewing raised this argument at the district court by moving for a judgment of acquittal under Federal Rule of Criminal Procedure 29, and the district court denied the motion.

"We review the district court's denial of [a] motion for judgment of acquittal *de novo*." *United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020) (emphasis added). "Our task is to determine whether, 'viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.'" *United States v. Robinson*, 99 F.4th 344, 353 (6th Cir. 2024) (quoting *United States v. Baggett*, 251 F.3d 1087, 1095 (6th Cir. 2001)). "In doing so, we do not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *Id.* (quoting *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006)). We simply ask whether the "jury behaved irrationally in concluding beyond a reasonable doubt" that the defendant committed the charged crime. *United States v. Miller*, 982 F.3d 412, 440 (6th Cir. 2020).

18 U.S.C. § 924(c)(1)(A) criminalizes brandishing a firearm "during and in relation to any crime of violence[.]" The only element of this crime that Ewing contests is whether he used a real firearm, as opposed to a fake firearm, during the bank robbery in Smyrna. It is true that a weapon qualifies as a firearm under the statute if it is capable of "expel[ing] a projectile by the action of an explosive" or is a "destructive device." 18 U.S.C. § 921(a)(3); *see United States v. Sherer*, 770 F.3d 407, 412 (6th Cir. 2014).

But sufficient evidence supported the jury's finding that Ewing used such a firearm during the bank robbery in Smyrna. Multiple witnesses at trial supported such a finding. Daniel Krouse ("Krouse"), the assistant manager for Regions Bank in Smyrna, indicated that based on his experience with guns and his observations of the bank robbery on April 4, 2022, Ewing "had a gun" during the bank robbery and the "gun was real." Trial Tr. Vol. 2-B, R. 202, Page ID

#1227-28, 1238-39. Krouse stated that one of the robbers said that "they were going to take somebody out" if they did not get money from the vault at the bank. *Id.* at 1229. Krouse also stated that, after the bank robbery, he "questioned if it's worth going to work to lose [his] life." *Id.* at 1244. Derrick Wallace ("Wallace"), another employee at Regions Bank who witnessed the bank robbery, indicated that Ewing was holding a "real gun" and it did not "look to be a toy gun" because he noticed that the gun was like a "semi-automatic pistol type of gun." *Id.* at 1334, 1338-39. Wallace stated that he felt his "life was in jeopardy that day." *Id.* at 1343. Additionally, McCullough also testified that she observed guns under Ewing's couch in his apartment. Given this evidence, and especially "viewing the evidence in the light most favorable to the government," *Robinson*, 99 F.4th at 353 (quoting *Baggett*, 251 F.3d at 1095), the jury did not "behave[] irrationally" in finding that Ewing brandished a real firearm within the meaning of the statute during the bank robbery in Smyrna. *See Miller*, 982 F.3d at 440.

Ewing challenges the testimony of these witnesses because "Krouse claimed experience but that experience was not provided to the jury to properly weigh his conclusion" and "Wallace's belief is standing alone with no foundation at all." Ewing Appellant's Br. at 47. But we do not "consider the credibility of witnesses" in reviewing the sufficiency of evidence supporting a conviction. *Robinson*, 99 F.4th at 353 (quoting *Jackson*, 470 F.3d at 309). Ewing also highlights *United States v. Farrad*, 895 F.3d 859 (6th Cir. 2018) and *United States v. Crowe*, 291 F.3d 884 (6th Cir. 2002), wherein this Court sustained convictions involving a firearm after the government presented as proof different types of evidence than that used in this case. But we do not "weigh the evidence presented," *Robinson*, 99 F.4th at 353 (quoting *Jackson*, 470 F.3d at 309), and instead we merely ask whether the jury in this case "behaved irrationally in concluding beyond a

reasonable doubt" that Ewing used a firearm within the meaning of the statute during the bank robbery. *See Miller*, 982 F.3d at 440. And the jury did not do so.

We thus affirm the district court's denial of Ewing's motion for judgment of acquittal.

### III.    CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the rulings of the district court.